JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL KEENAN,<br>Defendant. | Case No. 5:24-cv-00325-CV (SPx)<br><br>**ENTRY OF JUDGMENT AND ORDER GRANTING THE PARTIES' STIPULATION TO DISMISS THE UNITED STATES' COMPLAINT AND INCORPORATE SETTLEMENT AGREEMENT INTO THE COURT'S JUDGMENT**<br>**[DOC. #38]** |

On July 25, the Parties filed their Stipulation to Dismiss the United States' Complaint And Incorporate Settlement Agreement Into the Court's Judgment (ECF No. 38) ("Stipulation"). The Stipulaiton requests this Court incorporate the terms of the Settlement Agreement ("Agreement") attached as Exhibit 1 into its judgment and dismiss with prejudice the United States' Complaint.

The Court, having considered the Parties' Stipulation and good cause having been found, hereby GRANTS the Stipulation and ORDERS as follows:

1. Pursuant to the terms of the Agreement reached by the Parties, the United States' Complaint (Doc. # 1) is dismissed with prejudice;

2. The Agreement attached to the Stipulation as Exhibit 1 is incorporated into and made part of this Judgment; and

3. This Court will retain continuing jurisdiction to enforce the terms of the Agreements consistent therewith.

**IT IS SO ORDERED.**

Dated:   8/14/25            *Cynthia Valenzuela*

                                      HON. CYNTHIA VALENZUELA
                                      UNITED STATES DISTRICT JUDGE

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into by the United States of America ("United States"), by authority of the Attorney General of the United States on behalf of the Department of the Interior, Bureau of Indian Affairs ("BIA"), and acting on its own behalf as trustee for the Colorado River Indian Tribes ("CRIT"), a federally recognized Indian Tribe, and Michael Keenan ("Settling Defendant") (collectively, "the Parties") with respect to all matters and claims arising out of the litigation the United States District Court for the Central District of California, captioned *United States v. Keenan*, Case No. 5:24-cv-00325.

## RECITAL OF MATERIAL REPRESENTATIONS

A. CRIT is a federally recognized Indian tribe residing on the Colorado River Indian Reservation ("Reservation"), which Congress established in 1865. The Reservation straddles the Colorado River as it forms the state borders between Arizona and California. Originally, the Reservation was located entirely to the east, or Arizona side, of the Colorado River. The Reservation was expanded through executive orders dated November 22, 1873; November 16, 1874; May 15, 1876, and November 22, 1915.

B. In 1964, Congress passed legislation "for the purpose of fixing the beneficial ownership of real property interests" in the Reservation, providing that the "unallotted lands of the [Reservation] . . . are hereby declared to be tribal property held in trust by the United States for the use and benefit of [CRIT]." Pub. L. No. 88-302, 78 Stat. 188, 189 (Apr. 30, 1964) ("1964 Act"). In addition, the 1964 Act authorized the Secretary of the Interior ("Secretary") to approve leases (also called "permits") for lands on the Reservation, but the 1964 Act initially held in abeyance the Secretary's leasing authority on "lands lying west of the present course of the Colorado River and south of section 25 of township 2 south, range 23 east, San Bernardino base and meridian in California." *Id.* § 5. The 1964 Act further provided, however, "any of the described lands in California shall be subject to the provisions of [the 1964 Act] when and if determined to be within the [R]eservation." *Id.*

C. On January 17, 1969, the Interior Solicitor, Edward Weinberg, issued a legal opinion in which he determined that the western boundary of the Reservation included a portion of Riverside County, California. Solicitor's Opinion, "Western Boundary of the Colorado River Indian Reservation," Edward Weinberg, U.S. Dep't of the Interior, Opinion Letter on Western Boundary of the Colorado River Indian Reservation (Jan. 17, 1969), as reprinted in Opinions of the Solicitor of the Department of the Interior Relating to Indian Affairs 1917-1974 at Vol. II 2096, https://thorpe.law.ou.edu/sol_opinions/p2076-2100.htm. That same year, the Secretary, Stewart Udall, concurred in the opinion and instructed the Director of the Bureau of Land Management to suspend certain surveys and reinstate others so as to fix the line of the western boundary of the Reservation. In 1970, the subsequent Secretary, Walter Hickel, confirmed Secretary Udall's determination was a "final, official and unqualified declaration" on the proper location of the western boundary of the Reservation.

D. The BIA then published a notice in the Federal Register that extended the Colorado River Reservation Indian leasing program to "those lands which the Secretary of the Interior has determined, pursuant to the Act of April 30, 1964 (78 Stat. 188), to be within the [R]eservation."

*Settlement Agreement Page 1 of 10*

Exhibit 1

*Certain California Lands Determined to Be Within the Colorado River Reservation*, 35 Fed. Reg. 18,051 (Nov. 25, 1970). The BIA explained that such lands are those "lying west of the present course of the Colorado River and south of sec. 25 of T. 2 S., R. 23 E., to the south line of sec. 12 of T. 5 S., R. 23 E., San Bernardino base and meridian in California." *Id.* After this November 25, 1970 Federal Register notice, the Secretary, through the BIA, began approving permits issued by CRIT to occupy Reservation lands within the area determined to be within the Reservation by the Secretary in 1969.

    E. On April 6, 1987, BIA approved Permit No. WB-352(R) ("Permit") that CRIT issued to Richard and JoAnn Meneley for single family residential occupancy of Lot 18 of the Twin Palms Subdivision, situated within Section 11, Township 4 South, Range 23 East, of the San Bernardino Base and Meridian ("Subject Property"). On August 9, 1996, the Permit was terminated for failure to pay rent. In 1998, the Settling Defendant purported to purchase any interest the Meneley's claimed in the Subject Property and began occupying the Subject Property.

    F. On February 8, 2024, the United States filed a Complaint against the Settling Defendant for trespass and ejectment under federal common law in the United States District Court for the Central District of California. The Complaint sought declaratory and monetary relief, as well as an order for ejectment.

    G. The Complaint alleged that the Settling Defendant had occupied the Subject Property without authorization since 1998.

    H. On June 28, 2024, the Settling Defendant filed an Answer to the United States' Complaint.

    I. On September 18, 2024, CRIT inspected the Subject Property.

    J. Through this Agreement, the Parties wish to resolve the issues raised in the United States' Complaint including, but not limited to, possession of the Subject Property and damages arising out of the Settling Defendant's past occupation of the Subject Property.

  NOW, THEREFORE, in consideration of the covenants, agreements, mutual promises, and representation hereinafter set forth, the Parties agree as follows:

## DEFINITIONS

    Whenever terms listed below are used in this Agreement, the following definitions shall apply:

    a. "BIA" shall mean the Bureau of Indian Affairs, of the Department of the Interior.

    b. "CRIT" shall mean the Colorado River Indian Tribes.

    c. "Delivery" shall mean the act of depositing the identified items in the mail to the individuals and addresses listed below in Paragraph 16 with proper postage paid.

d. "Effective Date" shall mean the date upon which the United States District Court for the Central District of California enters an order in *United States v. Keenan*, Case No. 5:24-cv-00325, accepting the terms of this Agreement, at which time this Agreement shall be valid, binding, and effective.

e. "Hazardous materials" means any substance, material or waste which is or becomes designated, classified or regulated as being "toxic" or "hazardous" or a "pollutant" or which is or becomes similarly designated, classified or regulated under any federal, state or local law, regulation or ordinance, including but not limited to petroleum. Asbestos building materials that are part of any structure on the Subject Property shall not be considered "hazardous materials."

f. "Interfere" shall mean, but not be limited to, reoccupying or attempting to reoccupy the Subject Property or its permanent improvements, attempting to convey the Subject Property or its permanent improvements, authorizing or encouraging others to occupy the Subject Property or its permanent improvements without CRIT's permission, and erecting structures to prevent CRIT's access to the Subject Property.

g. "Parties" shall mean the United States and the Settling Defendant.

h. "Reservation" shall mean those lands reserved for the Tribe by the Congressional Appropriation Act of March 3, 1865; as expanded by executive orders dated November 22, 1873, November 16, 1874, May 15, 1876, and November 22, 1915; Public Law No. 88-302 of April 30, 1964; Public Law No. 109-47 of August 2, 2005; and including but not limited to land determined to be within the Reservation by the Secretary in 1969. For the purpose of this Agreement and in defining the boundaries of the Reservation now and in the future as between the parties, the United States' determination of the lands held in trust for CRIT shall be final and controlling at any relevant time.

i. "Restoration" shall mean returning the structure on the Subject Property to a condition that is safe and habitable for future tenants.

j. "Secretary" shall mean the Secretary of the Department of the Interior.

k. "Settling Defendant" shall mean Michael Keenan.

l. "Subject Property" shall mean the parcel of real property identified in Paragraph E of the recitals, above.

m. "United States" shall mean the United States of America, including its departments, agencies, and instrumentalities.

n. "Vacate" shall mean leaving the permanent improvements on the Subject Property uninhabited and removing all personal property.

## TERMS AND CONDITIONS

1. **The Subject Property's Trust Status.**

    The Parties acknowledge and agree that the Subject Property is within the Reservation and is on land held in trust by the United States for the benefit of CRIT. The Settling Defendant agrees to not occupy any parcel of real property within the Reservation, including but not limited to land determined to be within the Reservation by the Secretary in 1969, without first obtaining CRIT's authorization.

2. **Conveyance of the Permanent Fixtures and Personal Property to CRIT.**

    A. Within fourteen (14) days after the Effective Date of this Agreement, the Settling Defendant will provide the United States with proof of title to the residence on the Subject Property. The Settling Defendant will likewise provide the United States with proof, satisfactory to the United States, that the rights of any and all third-party tenants, lessees, or parties-in-possession, whether by oral or written agreement, have been terminated.

    B. Within thirty (30) days after the Effective Date of this Agreement, the Settling Defendant will remove all personal property.

    C. Within thirty (30) days after the Effective Date of this Agreement, the Settling Defendant will provide the United States with proof that he has paid all state and local taxes owing on the Subject Property and residence thereon. The Settling Defendant acknowledges that this Agreement does not indemnify him against any future claim by the County of Riverside for taxes that may be owed after the Effective Date of this Agreement.

    D. Within thirty (30) days after the Effective Date of this Agreement, the Settling Defendant will provide information concerning the location of any wells on the Subject Property.

    E. Within thirty (30) days after the Effective Date of this Agreement, the Settling Defendant will Vacate the Subject Property peaceably, without legal process, and without:

    i. damaging or destroying the land or surrounding properties; or

    ii. damaging, destroying, or removing any existing, permanent improvements, including utilities.

    F. No later than five (5) business days after the Settling Defendant Vacates the Subject Property, the Settling Defendant will transfer title and keys to the residence located on the Subject Property to CRIT. This act shall be performed at the Office of the Attorney General of the Colorado River Indian Tribes, 26600 Mohave Road, Parker, AZ 85344.

    G. The Settling Defendant will be responsible for terminating all agreements with third party providers of power, water, gas, or any other services effective within thirty (30) days after the Effective Date of this Agreement, understanding that any such provider shall be entitled to remove thereafter any products, tanks, or equipment supplied by such provider for any services rendered.

*Settlement Agreement Page 4 of 10*

Exhibit 1

    **H.** The Settling Defendant will not interfere in any way with the United States' or CRIT's ability to access the Subject Property at any time thirty (30) days after the Effective Date of this Agreement.

    **I.** Any property remaining on the Subject Property after thirty (30) days after the Effective Date of this Agreement will be deemed abandoned or forfeited by the Settling Defendant and the United States and CRIT may dispose of all remaining property in any way they deem fit, appropriate, and expedient.

**3.**    **Payment of Damages**

    **A.** The Settling Defendant agrees to pay $10,000 to CRIT on the following payment schedule:

        **i.** An initial payment of $1,000 was made to CRIT on May 13, 2025.

        **ii.** A second payment of $1,000 shall be made to CRIT on July 1, 2025.

        **iii.** The remaining amount of $8,000 shall be paid in installments of $2,000 per month for 4 months on the following dates:

> Friday, August 1, 2025,
> Monday, September 1, 2025,
> Wednesday, October 1, 2025, and
> Monday, November 3, 2025.

        **iv.** Payments made after their designated deadline will be deemed late.

        **v.** All payments shall be made via check to "Colorado River Indian Tribes" and mailed to the following address:

> Colorado River Indian Tribes
> 26600 Mohave Rd.,
> Parker, AZ 85344

    **B.** If Settling Defendant fails to make an on-time payment under Paragraph 3(A), interest will accrue on any overdue amounts. Interest will be assessed at a rate of twelve-percent (12%) per month and will compound monthly until the balance is paid. Interest will begin to accrue immediately following the payment's due date, and overdue payments shall be due on the first business day of the following month.

    **C.** If Settling Defendant fails to make an on-time payment, CRIT shall issue an invoice to Settling Defendant for all amounts due under this Agreement within five (5) business days of the missed payment, with payments to be due on the first business day of the following month. The Notification will be sent via mail at the address listed in Paragraph 16.

    D. If Settling Defendant's fails to pay, the Settling Defendant is deemed to be in material breach of this Agreement and the United States or CRIT may seek any remedy available under Paragraphs 7 and 8.

4. **Indemnification.**

The Settling Defendant shall indemnify, save, and hold harmless the United States and CRIT, and their respective officials, agents, employees, contractors, subcontractors, and representatives from any and all claims or causes of action arising from, or on account of, negligent or other unlawful acts or omissions of the Settling Defendant, his employees, agents, contractors, subcontractors, and any persons acting on the Settling Defendant's behalf or under his control, in carrying out activities pursuant to this Agreement, including but not limited to, any and all claims for damages and reimbursement arising from or on account of any contract, agreement, or arrangement between the Settling Defendant and any person for performance of any of the Settling Defendant's cleanup and remediation obligations under this Agreement.

5. **Mutual Release of Claims.**

    A. The Parties acknowledge and agree that this Agreement resolves any and all manner of actions and causes of actions, complaints, claims, counterclaims, suits, debts, liens, appeals, obligations, and demands whatever, of any kind or nature, whether known or unknown, which each Party has, or may have had, arising out of or related in any manner to the facts alleged in the litigation currently pending in the United States District Court for the Central District of California, captioned *United States v. Keenan*, Case No. 5:24-cv-00325. This Mutual Release of Claims shall have no effect on any and all claims, demands, rights and causes of action against the Settling Defendant arising after the Effective Date of this Agreement, including, but not limited to, claims brought by the United States or CRIT as the intended third-party beneficiary to enforce the terms of this Agreement, as permitted herein. This Agreement is a compromise settlement of disputed claims. This Agreement is not, and shall not be construed as, an admission of liability by any of the Parties.

    B. **Environmental Contamination Exception.** This Agreement shall not waive or in any way affect any claims, actions, suits, or proceedings brought by the United States against the Settling Defendant for loss, liabilities, damages, fines, costs or expenses, including reasonable attorneys' fees, consultants' fees, investigation and laboratory fees, court costs and litigation expenses, which arise from the release or threatened release of hazardous materials in, on or under the Subject Property caused by the Settling Defendant or his agents, employees, subtenants, assignees or invitees or contractors.

6. **Attorneys' Fees and Costs.**

The Parties shall each be responsible for their own attorneys' fees, costs, and other litigation expenses in connection with *United States v. Keenan*, Case No. 5:24-cv-00325.

7. **Enforcement of Agreement.**

    **A.** The Parties agree to the continuing jurisdiction of the United States District Court for the Central District of California in *United States v. Keenan*, Case No. 5:24-cv-00325 for the purpose of enforcing the terms of this Agreement.

    **B.** The Parties agree to the continuing jurisdiction of the United States District Court for the Central District of California in *United States v. Keenan*, Case No. 5:24-cv-00325 for the resolution of any dispute that arises under Paragraph 5(B) "Environmental Contamination Exception."

    **C.** Not later than five (5) days after the Parties have executed this Agreement, the Parties shall jointly file this Agreement as part of a proposed Order to be entered in the United States District Court for the Central District of California in *United States v. Keenan*, Case No. 5:24-cv-00325.

8. **Alternative Dispute Resolution Process.**

After the Effective Date of this Agreement, if there is a dispute over compliance with any term or provision of the Agreement, the disputing Party shall notify the other Party in writing of the dispute. The Parties shall attempt to work out the dispute informally, as set forth below, before seeking judicial review of the United States District Court for the Central District of California in *United States v. Keenan*, Case No. 5:24-cv-00325. The intended third-party beneficiary identified in Paragraph 14 shall also follow these alternative dispute resolution processes:

    **A.** The disputing Party shall engage the other Party in an informal dispute resolution. During this informal dispute resolution period, which shall not exceed thirty (30) days (unless the Parties agree to an extension of the period), the Parties shall meet as many times as they deem necessary to discuss and attempt to resolve the dispute.

    **B.** If the Parties are unable to resolve the dispute through informal dispute resolution, any Party may file a motion asking the United States District Court for the Central District of California in *United States v. Keenan*, Case No. 5:24-cv-00325 to enforce the relevant term(s) and provision(s) of this Agreement.

9. **Authority of the Parties.**

The undersigned representative(s) for each Party certifies that they are fully authorized by the Party whom they represent to enter into the terms and conditions of this Agreement and to bind legally such Party to it.

10. **Full Cooperation in Consummating Agreement.**

The Parties shall cooperate fully in the execution of any and all other documents and the completion of any additional actions that may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement.

## 11. Construction of Agreement.

For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all of the Parties and shall not be construed against any of them in any dispute for that reason.

## 12. Modification.

The Agreement shall only be amended in writing duly executed by authorized representatives of the Parties.

## 13. Parties Bound.

This Agreement shall be binding upon the United States and the Settling Defendant, and each of his heirs, successors, and assigns.

## 14. Third-Party Beneficiaries.

CRIT, including its respective officers, agents, employees, and contractors, is the only intended third-party beneficiary of this Agreement. Except for CRIT, nothing contained in this Agreement shall entitle any other person or entity other than the Parties or their officers, agents, employees, contractors, heirs, successors or assigns to any claim, cause of action, remedy, right, benefit, or immunity of any kind whatsoever.

## 15. Execution in Counterparts.

This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

## 16. Notice.

A. The Parties shall at all times keep one another informed of the names, addresses and contact information of their respective principal representatives for purposes of this Agreement.

B. All Notices or other communications required or permitted by this Agreement, except as otherwise provided by this Agreement, shall be in writing and personally delivered, by reputable overnight courier, or sent by registered or certified mail, return receipt requested, and postage prepaid, addressed to the Parties at the addresses set forth below (or any other address that the Party to be notified may have designated to the sender by like notice), by facsimile to the numbers set forth below, or by electronic mail to the e-mail addresses set forth below. Notices personally delivered shall be deemed given the day so delivered. Notices given by overnight courier shall be deemed given on the first business day following the mailing date. Notices mailed as provided herein shall be deemed given on the third business day following the mailing date. Notices sent by facsimile or e-mail shall be deemed delivered on the date the facsimile or e-mail is received. Notice of change of address shall be given by written notice in the manner detailed in this paragraph.

| If to the United States, to: | With a copy to: |

*Settlement Agreement Page 8 of 10*

Exhibit 1

| If to the United States, to: | With a copy to: |
|---|---|
| Marisa J. Hazell, Trial Attorney<br>Rebecca Ross, Trial Attorney<br>Tribal Resources Section<br>Environment and Natural Res. Div.<br>U.S. Department of Justice<br>P.O. Box 7611<br>Ben Franklin Station<br>Washington, D.C. 20044-7611 | Shani Sumter, Attorney-Adviser<br>Indian Trust Litigation Office<br>Office of the Solicitor<br>U.S. Department of the Interior |

If to Settling Defendant:

Michael Keenan
431 S. Tracy Ln,
Orange, CA 92869

| If to the Colorado River Indian Tribes, to: | With a copy to |
|---|---|
| Chairwoman Amelia Flores<br>Executive Offices<br>Colorado River Indian Tribes<br>26600 Mohave Rd.<br>Parker, AZ 85344 | Rebecca Loudbear<br>Office of the Attorney General<br>Colorado River Indian Tribes<br>26600 Mohave Rd.<br>Parker, AZ 85344 |

17. **Merger of Prior Agreements.**

> The Parties intend that this Agreement shall be the final expression of their agreement with respect to the subject matter hereof and may not be contradicted by evidence of any prior or contemporaneous oral or written agreements or understandings. The Parties further intend that this Agreement shall constitute the complete and exclusive statement of its terms and that no extrinsic evidence whatsoever (including, without limitation, prior drafts or changes therefrom) may be introduced in any judicial, administrative or other legal proceeding involving this Agreement.

18. **Severability.**

> The invalidity of any portion of this Agreement shall not invalidate the remainder. If any term, provision, covenant, or condition of this Agreement is held to be invalid, void, or unenforceable by a court of competent jurisdiction, the Parties shall amend this Agreement and/or take other action necessary to achieve the intent and purpose of this Agreement in a manner consistent with the ruling of the court.

19. **Additional Documents.**

> The Parties agree that they will execute any additional documents required to be signed to effectuate any of the terms and conditions of this Agreement in a timely manner.

The Parties have duly executed this Agreement as of the respective dates written below.

Exhibit 1

DATED: July 8, 2025

ADAM R.F. GUSTAFSON

Acting Assistant Attorney General

*/s/ Marisa J. Hazell*
MARISA J. HAZELL
REBECCA ROSS
United States Department of Justice
Environment & Natural Resources Division
Tribal Resources Section
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044-7611
TEL:  (202) 532-3055
FAX:  (202) 353-1156
*Attorney for United States*

DATED: July 8, 2025

MICHAEL KEENAN

431 S. Tracy Lane,

Orange, CA 92869

TEL: (714) 271-7769

*Defendant*